# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ANNIE PORTER, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>KEDPLASMA USA; AND KEDRION BIOPHARMA, INC.,<br><br>Defendants. | CASE NO.<br>3:23-cv-3071 |

## **NOTICE OF REMOVAL**

In accordance with 28 U.S.C. §§ 1332, 1441 and 1446, Defendants KEDPlasma USA[1] ("KEDPlasma") and Kedrion Biopharma, Inc. ("Kedrion") (collectively, "Defendants") hereby remove the civil action pending in the Circuit Court of the Seventh Judicial District for Sangamon County, Illinois, Case No. 2023-CH-000001, to the United States District Court for the Central District of Illinois. In support of removal, Defendants state as follows:

1. On January 26, 2023, Plaintiff Annie Porter ("Plaintiff") commenced an action against Defendants by filing in the Circuit Court of the Seventh Judicial District for Sangamon County, Illinois a complaint styled as ANNIE PORTER, individually and on behalf of all similarly situated individuals v. KEDPLASMA USA; AND KEDRION BIOPHARMA, INC, Case No. 2023-CH-000001. (A copy of the Complaint ("Compl.") and summons served upon Defendants is attached hereto as **Exhibit A**). The Complaint seeks relief under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1 *et seq.*, including, among other things, liquidated damages of $1,000 to $5,000 from each Defendant for alleged negligent and/or reckless

---

[1] Plaintiff has improperly named KEDPlamsa USA as a defendant, which does not exist as a legal entity. Defendants assume for the purpose of this Notice of Removal that Plaintiff intended to bring suit against KEDPlasma, LLC.

violations of BIPA. (Compl. ¶¶ 46(A), 53(A)). Defendants were served with the Complaint on February 21, 2023. (*See* Notice of Service of Process, **Ex. A**).

I. **This Matter Meets All the Requirements of 28 U.S.C. § 1332(d)(2) for Jurisdiction Under CAFA.**

2.  This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which grants to the United States District Courts original jurisdiction over "any civil action" [1] in which the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" and [2] is a "class action" in which, among other things, "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d); *see also Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 621 (7th Cir. 2012) (noting that the "language and structure of CAFA . . . indicate[ ] that Congress contemplated broad federal court jurisdiction with only narrow exceptions"). This matter meets all the requirements for jurisdiction under CAFA.

3.  This matter is a "class action" under CAFA because a "class action" for purposes of CAFA is defined as "any civil action filed in a district court of the United States under Rule 23 of the Federal Rules of Civil Procedure or any civil action that is removed to a district court of the United States that was originally filed under a State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). The Complaint purports to allege claims on behalf of a class of "Defendants' donors who scanned their fingerprints in order to donate plasma to Defendants in Illinois, without first executing a written release, from five years preceding the filing of this Complaint until resolution of this action." (Compl. ¶ 28). Therefore, this action is properly considered a "class action" under CAFA.

4.  The requirement of minimal diversity is also satisfied. Plaintiff is a citizen of the

State of Illinois. (*See* Compl. ¶ 16). Defendants are citizens of a State other than Illinois within the meaning of 28 U.S.C. Section 1332(d). Defendant KEDPlasma is now, and was at the time this action commenced, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in the State of New Jersey. (*See* Compl. ¶ 17.) Therefore, Defendant KEDPlasma is a citizen of the State of Delaware and the State of New Jersey. Defendant Kedrion is now, and was at the time this action commenced, a corporation formed under the laws of the State of Delaware, with its principal place of business in the State of New Jersey. (*See id*. ¶ 18.) Therefore, Defendant Kedrion is a citizen of the State of Delaware and the State of New Jersey. As a result, the parties meet the requirement of minimal diversity for purposes of 28 U.S.C. § 1332(d)(2)(A).

5. Further, the "matter in controversy" aggregated across all the purported class members' claims satisfies CAFA. Under CAFA, "the matter in controversy" must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy in class actions, CAFA expressly requires that "the claims of the individual members shall be aggregated . . ." 28 U.S.C. § 1332(d)(6).

6. For this amount in controversy to be satisfied, there need only be "a reasonable probability that the stakes exceed" $5,000,000. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). In this regard, the Seventh Circuit has acknowledged "the difficulty a defendant faces when the plaintiffs, who control the allegations of the complaint, do not want to be in federal court and provide little information about the value of their claims." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011). Accordingly, "the party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id*. (citing *Brill*, 427 F.3d at 448 (7th Cir. 2005)). This burden thus "is a

pleading requirement, not a demand for proof." *Id*. (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)).

7. Defendants deny the validity and merit of the entirety of Plaintiff's alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that allegedly flow therefrom. But for purposes of setting forth grounds for this Court's jurisdiction—and without conceding that Plaintiff or the putative class are entitled to damages or penalties or any relief whatsoever—it is apparent that although the Complaint does not affirmatively specify a damages figure, the aggregated claims of the putative class exceed CAFA's jurisdictional minimum.

8. The Complaint alleges that Plaintiff "has twice donated plasma to Defendants in June 2022" and that each time Plaintiff donated plasma she was "required . . . to have [her] fingers scanned[.]" (Compl. ¶¶ 7-9).

9. Plaintiff appears to allege that each time she was "required . . . to have [her] fingers scanned[,]" each Defendant committed four separate violations of BIPA. While the Complaint only specifies two counts, one alleging a violation of BIPA Section 15(b) and one alleging a violation of BIPA 15(a), the Complaint otherwise alleges that each Defendant violated Section 15(b) in three separate ways. (*See* Compl. ¶ 43 ("Defendants violated the Biometric Information Privacy Act by capturing or collecting Plaintiffs and the Class's biometric identifiers and biometric information without first informing them in writing that Defendants were doing so."), *id.* ¶ 44 ("Defendants violated the Biometric Information Privacy Act by capturing or collecting Plaintiffs and the Class's biometric identifiers and biometric information without first informing them in writing of the purpose of Defendants doing so and the length of time Defendants would store and use Plaintiffs and the Class's biometric identifiers and/or biometric information."), *id.* ¶ 45

("Defendants violated the Biometric Information Privacy Act by capturing or collecting Plaintiffs and the Class's biometric identifiers and biometric information without first obtaining their written consent or other release authorizing Defendants to capture or collect Plaintiffs and the Class's biometric identifiers and/or biometric information.")).

10. Given that the Complaint is seeking $1,000 to $5,000 in liquidated damages for "each" violation of BIPA (*see, e.g.*, Compl. ¶ 46(A)), while also alleging that each Defendant violated BIPA four separate ways, it is plausible that Plaintiff seeks to recover up to $40,000 in damages for each time she was "required . . . to have [her] fingers scanned[.]" (*Id*. ¶¶ 7-9.)

11. Courts have found the amount in controversy requirement is satisfied when a Complaint alleges a violation of BIPA while also alleging that the Plaintiff seeks to recover for each such violation. *See Peatry v. Bimbo Bakeries USA, Inc.*, 19-cv-2942, 2019 WL 3824205 (N.D. Ill. Aug. 7, 2019) ("[T]he Court agrees with Bimbo that Peatry's complaint and BIPA together can plausibly be read to suggest that a violation of at least some of the BIPA provisions at issue allegedly occurred every time Peatry and the putative class members clocked in and out of work."); *see also Sabrina Roppo v. Travelers Commercial Ins. Co*., 869 F.3d 568, 579 (7th Cir. 2017) (a "removing party [ ] only must establish the amount in controversy by a good faith estimate that is plausible and adequately supported by the evidence") (internal quotation omitted).

12. Defendants do not agree that Plaintiff is entitled to that measure of damages under BIPA,[2] but, for removal purposes only, the question is not "what damages the plaintiff will recover, but only how much is in controversy between the parties." *Id.* (emphasis in original). Indeed, the

---

[2] Defendants deny that Plaintiff can seek or recover under BIPA for each "scan" because, among other things, such a result would conflict with a plain language of the statute and would raise serious constitutional and policy concerns. Nonetheless, for purposes of removal, Plaintiff's allegations and requested relief, and the plausible inferences drawn therefrom, must be accepted as true for purposes of determining the amount in controversy. *See generally CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000).

"party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties. Further, the removing defendant need not confess liability in order to show that the controversy exceeds the threshold." (*Id.* (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008).)

13. The Complaint also alleges that the putative class includes "more than 50 members." (Compl. ¶ 30.) An application of Plaintiff's damages theory set forth above to the "more than 50 members" of the class, would likely exceed the jurisdictional threshold. Plaintiff alleges that each class member is entitled to recover $40,000 for every individual "scan." Assuming only 50 class members aside from Plaintiff, the putative class would only need to average less than two and a half total scans to have a claim over $5,000,000 in the aggregate.[3] *See Peatry*, 2019 WL 3824205, at *2 ("Treating each scan as a separate violation, Peatry would only need to have scanned her fingerprint sixteen times to exceed the $75,000 threshold, which she plausibly did many more times over the course of her thirty months of employment. Alternatively, Bimbo claims that the Court has jurisdiction under CAFA, with a class of at least 300 members needing to only scan their fingerprints four times each to exceed CAFA's $5 million amount in controversy requirement.").

14. Because Plaintiff alleges that she is typical of the class and she was twice required to submit to a scan, it is also a plausible inference that the class averages approximately two scans per class member.

15. Regardless, this estimate is conservative in light of Plaintiff's allegation that the putative class consists of "***more than*** 50 members." (Compl. ¶ 29) (emphasis added).

16. Separate from Plaintiff's allegations in the Complaint, Defendants represent that

---

[3] $5,000,000 / (51*40,000) = \sim2.45$.

within the class period identified by Plaintiff (five years preceding the filing of the Complaint), Defendants have had more than two hundred fifty (250) individuals donate plasma in Illinois.[4] Assuming that each of these individuals are putative class members, the amount in controversy easily exceeds CAFA's $5 million amount in controversy requirement.[5]

17.   Moreover, Plaintiff, and the putative class are seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003) (in a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001) (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998) (similar); *cf. Oshana v. Coca-Cola Co.*, 472 F.3d 506, 512 (7th Cir. 2006) (similar).

18.   Defendants deny that Plaintiff and the putative class could recover any damages, much less any damages for "willful" violations of BIPA, but for purposes of determining whether subject matter jurisdiction exists under CAFA, the amount in controversy is satisfied.[6]

---

[4] To the extent Plaintiff challenges that CAFA's amount in controversy requirement is satisfied here, Defendants are prepared to offer the evidence necessary to show rebut any such contention. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89 (2014) ("Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.")

[5] $250*10{,}000*2 = 5{,}000{,}000$

[6] Defendants further clarify that even though Plaintiff is not entitled to any damages for any claim under Section 15(a) of the BIPA, first and foremost because Defendants did not violate the statute, Plaintiff nonetheless has Article III Standing to pursue a Section 15(a) claim because Plaintiff alleges Defendants retained her biometric information and failed create and follow a retention and destruction policy.  (Compl. ¶¶ 47-53)*; see Fox v. Dakkota Integrated Sys.,*

**II.     Diversity-Of-Citizenship Jurisdiction Exists Because the Parties Are Citizens of Different States and The Amount in Controversy Is Satisfied.**

19.     Complete diversity exists between the parties. *See Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 458 (7th Cir. 2018) (diversity of citizenship jurisdiction "requires complete diversity between the parties"). Plaintiff is a citizen of the State of Illinois (*see* Compl. ¶ 16), and Defendants are not "citizens" of Illinois. (*See supra* ¶ 4.) The parties thus are completely diverse and because Defendants are not citizens of the state in which the action was brought, *see* 28 U.S.C. § 1441(b)(2), the "citizenship" component of the removal analysis is satisfied.

20.     The amount-in-controversy requirement is satisfied, as well. While the Complaint does not affirmatively specify a damages figure, and while Defendants deny any liability whatsoever as to Plaintiff's claims, the amount-in-controversy requirement is satisfied because, according to the Complaint, it appears that Plaintiff is seeking damages in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1446(c)(2); *see also Dart Cherokee*, 135 S. Ct. at 554 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"). It is plausible that Plaintiff seeks to recover $40,000 in damages for each time she had to scan her finger before donating plasma. Because Plaintiff alleges that she scanned her finger twice (*see* Compl. ¶¶ 7-9), her individual claims, alone, plausibly satisfy the amount in controversy requirement.

21.     Plaintiff is also seeking injunctive relief and attorneys' fees, which also factor into evaluating the amount in controversy for jurisdictional purposes. *See Macken*, 333 F.3d at 799 (in

---

*LLC*, 980 F.3d 1146, 1154–55 (7th Cir. 2020) ("The BIPA [Section 15(a)] requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime. It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data.").

a suit for injunctive relief, "the amount in controversy is measured by the value of the object of the litigation"); *Hunt*, 432 U.S. at 347 ("[I]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation"); *Hart*, 253 F.3d at 274 (where state statute allowed recovery of attorney's fees, fees incurred as of the date of filing properly included in amount-in-controversy analysis); *see also Gardynski-Leschuck*, 142 F.3d at 957 (similar); *cf. Oshana*, 472 F.3d at 512 (similar).  Therefore, Plaintiff's additional requested relief further sustains that more than $75,000 is at issue.

**III.    Defendants Have Satisfied the Procedural Requirements for Removal.**

22.    Given that the Complaint does not affirmatively and unambiguously allege the total amount of damages sought and given that Defendants have received no other pleading or other paper that affirmatively and unambiguously discloses the amount of monetary damages sought, this Notice of Removal is timely.  *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (2013) ("The 30-day removal clock [under CAFA] does not begin to run until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present.  With respect to the amount of controversy in particular, the pleading or other paper must specifically disclose the amount of monetary damages sought.").

23.    Furthermore, this Notice of Removal is timely because it is being filed within 30 days of Defendants' receipt of the Summons and Complaint on February 21, 2023, and within one year of the commencement of this action.  28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under the applicable state law).

24.    Because this action is brought in the Circuit Court of the Seventh Judicial District

for Sangamon County, Illinois, venue for purposes of removal is proper in this Court under 28 U.S.C. § 93(a)(1). This District embraces Sangamon County, Illinois, the place where the removed action has been pending. *See* 28 U.S.C. § 93(a)(1); 28 U.S.C. § 1441(a).

25. In accordance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served on Defendants have been attached as **Exhibit A**.

26. In accordance with 28 U.S.C. §1446(d), Defendants will promptly provide written notice to Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Court for the Circuit Court of the Seventh Judicial District for Sangamon County, Illinois.

*   *   *

For the foregoing reasons, Defendants hereby remove this case from the Circuit Court of the Seventh Judicial District for Sangamon County, Illinois to the United States District Court for the Central District of Illinois and further request that this Court accept this Notice of Removal and assume jurisdiction over this matter for all further proceedings.

**Dated:** March 23, 2023

Respectfully submitted,

KEDPLASMA LLC AND KEDRION BIOPHARMA, INC.

By: */s/ Thomas E. Ahlering*
One of Their Attorneys

Thomas E. Ahlering
Andrew R. Cockroft
KING & SPALDING LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
(312) 764-6940
tahlering@kslaw.com
acockroft@kslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 23, 2023, a copy of **Defendants' Notice of Removal** has been filed electronically with the Clerk of the Court using CM/ECF, which will send notification of such filing to the e-mail addresses of all counsel of record denoted on the electronic Mail Notice List.

<u>/s/Thomas E. Ahlering</u><br>
Thomas E. Ahlering